UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MCLANE COVER,<br><br>    Plaintiff,<br><br>    v.<br><br>WINDSOR SURRY COMPANY, et al.,<br><br>    Defendants. | Case No. 14-cv-05262-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS**<br><br>Re: Dkt. No. 19 |

## INTRODUCTION

Defendants Windsor Surry Company, d/b/a WindsorONE, and Windsor Willits Company, d/b/a Windsor Mill (collectively "Windsor") move to dismiss plaintiff McLane Cover's complaint alleging misrepresentations regarding Windsor's TrimBoard housing trim product.

Windsor's motion is GRANTED IN PART and DENIED IN PART. Cover's UCL, FAL, CLRA, and negligence claims are DISMISSED WITH LEAVE TO AMEND for failure to plead fraud with particularity. His claim for breach of the implied warranty is DISMISSED WITH LEAVE TO AMEND for failure to plead facts satisfying an exception to the privity requirement to the extent that this claim is governed by California law.[1] The implied warranty claim survives to the extent that it is governed by Rhode Island or Virginia law. Cover has adequately pleaded a claim for breach of express warranty relating to Windsor's 10-year warranty for gluing.

Windsor's motion to strike the class allegations is DENIED. Cover's class allegations will be considered on a motion for class certification.

---

[1] As discussed below, the parties agree that Cover's negligence and warranty claims may potentially be governed by either California, Rhode Island, or Virginia law, but neither party argues that any particular state's law in fact applies to Cover's claims. I therefore review those claims under all three states' laws. The parties agree that the UCL, FAL, and CLRA claims are governed by California law. When this matter is briefed again, the parties should explain either which law they think applies to which claims or why they cannot do so because of lack of discovery.

**BACKGROUND**

Cover installed TrimBoard[2] manufactured and marketed by Windsor on his home in Rhode Island in 2005. FAC ¶¶ 56-57 [Dkt. No. 17]. He selected TrimBoard in reliance on the recommendations of his architect, contractor, and carpenter, all of whom were familiar with TrimBoard, including its marketing materials and warranty. *Id.* ¶ 59. Windsor's warranty guarantees the TrimBoard's "end and edge gluing for 10 years and its primer for 5 years." *Id.* ¶ 35. Cover alleges that Windsor made the following additional representations:

- That Trim Board "materials can provide you with the durability and long term performance you require in a fingerjoint trim board – free of defects and the potential callbacks they can cause." *Id.* ¶ 29;

- That consumers should "[t]hink of WindsorONE end and edge glued boards as turbo wood. Not only does it have all the great qualities of wood, but in addition, it benefits from structural stability, decreased cupping, warping or twisting, …, and it's defect free." *Id.* ¶ 30.

- That Trim Board's "joints are stronger than the wood itself, and waterproof." *Id.* ¶ 31.

After the TrimBoard was installed, Cover "routinely inspected his property throughout each year." *Id.* ¶ 63. "In approximately late 2012, while preparing the home for the winter season, [his] contractor alerted him to signs of rot and deterioration of the TrimBoard installed on the home." *Id.* ¶ 64. Cover and his contractor monitored the condition of the TrimBoard. Within six months, they noticed that "areas were so soft that a finger could press through it." *Id.* ¶ 66. Cover submitted a warranty claim to Windsor in August 2013. *Id.* ¶ 74.

Cover alleges that, contrary to Windsor's representations, TrimBoard is unable to withstand normal weather conditions; absorbs moisture and water at an extremely rapid rate; is manufactured utilizing low cost, low performance pine; and uses adhesive that is non-waterproof and unsuitable for exterior use. *Id.* ¶¶ 39-41. He alleges that these deficiencies lead to water absorption and prematurely decayed, rotted, split, warped and discolored trim. *Id.* ¶ 41. The trim

---

[2] TrimBoards are wooden boards made up of several shorter boards that are joined together using a finger joint and adhesive. They are marketed for interior and exterior application on wood structures as trim, often on New England-style wood-frame houses. FAC ¶ 27.

on Cover's home has swelled and rotted as a result of the TrimBoard's deficiencies, including failure of the end and edge gluing and primer. *Id*. ¶ 67.

Cover alleges seven causes of action: (i) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Profs. Code §§ 17500, *et seq*.; (ii) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code §§ 17200, *et seq*.; (iii) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*., (iv) breach of express warranty; (v) breach of implied warranty of merchantability; (vi) negligence; and (vii) declaratory and injunctive relief.[3]

He seeks to represent a class defined as:

> All persons and entities in the United States that own or owned homes, apartments, office buildings or other structures in which Trim Board is or was installed.

FAC ¶ 14. In the alternative, Cover seeks to represent a class defined as:

> [A]ll persons and entities in Rhode Island who own or owned homes, apartments, office buildings or other structures in which Trim Board is or was installed.

*Id*. ¶ 16.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This standard is not akin to a probability requirement, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

---

[3] Windsor does not address the seventh cause of action for declaratory and injunctive relief in its motion to dismiss.

3

relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

Windsor argues that (i) Cover's UCL, CLRA, FAL, negligence, and express warranty claims are barred by their statutes of limitations, (ii) the implied warranty claim fails for lack of privity, (iii) the claims are not pleaded with the requisite particularity, and (iv) the class allegations should be stricken because the class would be unmanageable and lacks commonality.

### I. STATUTES OF LIMITATIONS

#### A. UCL, FAL, and CLRA claims

Windsor argues that the UCL, FAL, and CLRA claims are time-barred because they accrued in 2005 when Cover's agents purchased the TrimBoard. Windsor argues that the claims are not tolled by the discovery rule or equitable tolling. In opposition, Cover argues that the claims were tolled until 2012 under the discovery rule or equitable tolling because he could not reasonably have discovered the alleged misrepresentations until the trim boards visibly manifested rotting at that time.

Windsor's argument that the discovery rule does not apply to UCL claims is based on the Ninth Circuit's statement in *Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002), that UCL claims "are subject to a four-year statute of limitations which began to run on the date the cause of action accrued, not on the date of discovery." However, a decade later, the California Supreme Court held that "the UCL is governed by common law accrual rules to the same extent as any other statute." *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1196 (2013). The Court stated that "just like common law claims challenging fraudulent conduct, a UCL deceptive practices claim should accrue only when a reasonable person would

4

have discovered the factual basis for a claim." *Id.* at 1195 (citation omitted). Although Windsor acknowledges *Aryeh*'s holding, it argues that "the Ninth Circuit has not overturned its decision in *Karl Storz Endoscopy* and it remains good law in this Circuit." Dkt. No. 19-1 at 13 n.5.

The Ninth Circuit's interpretation of California law is not binding following an "indication from the California courts that [the Ninth Circuit's] interpretation was incorrect." *Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 696 n.4 (9th Cir. 1992). As another judge in this district recently explained, "the *Aryeh* decision is a clear indication that the Ninth Circuit was incorrect in holding that the delayed discovery rule is not available to toll the statute of limitations for claims under the UCL." *Plumlee v. Pfizer, Inc.*, No. 13-cv-00414-LHK, 2014 WL 695024, at *8 n.6 (N.D. Cal. Feb. 21, 2014). Accordingly, I am bound by *Aryeh*, not *Karl Storz Endoscopy-America*, and I conclude that the discovery rule is available to toll the statute of limitations on Cover's UCL claim. This is consistent with other courts in the Ninth Circuit. *See e.g., id.*; *Hines v. Wells Fargo Home Mortgage, Inc.*, 2014 WL 5325470, at *6 (E.D. Cal. Oct. 17, 2014) (granting leave to amend UCL claim to plead that claim could not reasonably have been discovered until running of otherwise applicable statute of limitations); *see also Broberg v. Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 920-21 (2009) (in claims involving deceptive marketing materials and sales practices, "the better view is that the time to file a section 17200 cause of action starts to run only when a reasonable person would have discovered the factual basis for a claim.").[4]

The discovery rule is also available to toll Cover's CLRA and FAL claims.[5] *See, e.g.*

---

[4] Regardless of the discovery rule, it is not clear that Cover's UCL claim accrued in 2005 given that he arguably was not damaged until the wood started rotting years later. "When damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained." *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 886-87 (2000). Since private suits may be filed under the UCL only upon a showing of an injury in fact and the loss of money or property, Cal. Bus. & Prof. Code § 17204, a UCL cause of action does not accrue (and the statute of limitations does not begin to run) until there has been an injury in fact and loss of money or property. However, since the discovery rule tolls Cover's UCL claim, I need not determine, at least at this stage, whether his UCL claim did not accrue until the wood started rotting in 2012.

[5] Windsor does not explicitly argue that the discovery rule cannot be applied to FAL and CLRA claims. Rather, he argues that those claims are barred because they accrued in 2005, when the alleged misrepresentations were made.

1    *Plumlee*, 2014 WL 695024, at *8 ("The delayed discovery rule is available to toll the statute of
2    limitations under the CLRA, UCL, and FAL."); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504,
3    543 (C.D. Cal. 2012) ("The discovery rule tolls the statute of limitations for CLRA claims,
4    however."); *Burdick v. Union Sec. Ins. Co.*, 2009 WL 4798873, at *10 (C.D. Cal. Dec. 9, 2009)
5    ("whether the discovery rule applies to Burdick's FAL claim is a question of fact for the jury").

Cover alleges that he "routinely inspected his property throughout each year." FAC ¶ 63. He further alleges that his contractor alerted him to "signs of rot and deterioration of the TrimBoard installed on the home" in late 2012. *Id*. ¶ 64. That is sufficient to trigger the delayed discovery rule, at least at the pleadings stage. *See Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1024 (9th Cir. 2008) ("In California, the discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has reason to discover, the cause of action.'") (quoting *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 397 (1999)). Discovery may reveal that Cover had reason to discover his causes of action earlier, but he has adequately pleaded that he did not have reason to discover them until 2012. Windsor's motion to dismiss the UCL, FAL, and CLRA claims as time-barred is DENIED.

### B. Breach of express warranty claim

Cover alleges that Windsor's warranty states that it guarantees its "end and edge gluing for 10 years and its primer for 5 years." FAC ¶ 35. He further alleges that the trim board "failed to comport with the affirmations, statements, assertions, and representations made by [Windsor] and instead decayed and rotted prematurely and proved itself unfit for a number of its recommended exterior trim applications." *Id*. ¶ 120.

Windsor argues that the express warranty claim is barred to the extent that it is based on primer failure because the trim boards were installed in 2005, but did not start to rot and deteriorate until 2012, well after the five-year primer warranty expired in 2010. Windsor further argues that the alleged ten-year warranty for edge and end gluing does not apply because Cover has not alleged that any trim boards became separated or were damaged by glue failure as opposed to primer failure or another cause. In opposition, Cover argues that "his breach of warranty claim accrued just seven years after installation, well within the ten years of future performance

warranted by Defendants," because he installed the trim board in 2005 and discovered its failure to perform in 2012. Dkt. No. 23 at 8 (citing FAC ¶¶ 56, 64-65). At oral argument, counsel for Cover stated that Cover is not alleging a violation of the five-year warranty and that that warranty was mentioned in the complaint only as "background."[6] Dkt. No. 34 at 17.

Cover's claims regarding the 10-year glue warranty claim are adequately pleaded. He alleges that "the fascia trim on Plaintiff's structure has exhibited significant swelling and rotting as a result of the defective production of the Trim Board including, but not limited to the *failure of the end and edge gluing* and primer failures." FAC ¶ 67 (emphasis added). That is enough to state a claim for violation of the 10-year warranty.[7] Windsor argues that this allegation is inconsistent with how the Trim Board is actually manufactured or sold, but that is an argument better suited for summary judgment.

At oral argument, counsel for Cover suggested that the express warranty claims are based not just on the 10-year warranty, but on three defects separate or related to the glue defect. If that is his intent, he shall set forth the alleged representations and the remaining express warranty elements in an amended complaint. *See Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) ("to prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached") (internal quotations omitted).

---

[6] In light of counsel's representations, Cover is barred from bringing any claims based on the five-year warranty for primer failure. Any such claims would be untimely because the five-year warranty for primer failure expired in 2010.

[7] Windsor also argues that the warranty claim fails because Cover first submitted a warranty claim to Windsor in August 2013, one year after he first noticed a problem and three years after expiration of the five-year warranty claim, in violation of the reasonable notice requirements for recovery on a warranty claim. As noted above, Cover does not allege a violation of the five-year warranty. However, Cover's claims based on the 10-year gluing warranty were timely: he learned of the rot and deterioration in late 2012, monitored the condition of the TrimBoard over the following months, and submitted a warranty claim to Windsor in August 2013. FAC ¶¶ 63-66, 74. Windsor provides no authority that this is not timely.

### C. Negligence claim

Windsor asserts that Cover's negligence claim is governed by California or Virginia law because its TrimBoard is developed and manufactured in those states and the claim is based on allegedly negligent development and manufacture. It argues that the claim is time-barred under either California's three-year statute of limitations for injury to real property (Cal. Code Civ. P. § 338(b)) or Virginia's five-year statute of limitation for injury to property (Va. Code Ann. § 8.01-243) because the TrimBoard at issue was developed and manufactured in 2005 at the latest, the year that Cover installed it on his home. Cover does not address which state's law governs his negligence claim, but he appears to argue that the claim is tolled by the delayed discovery rule. *See* Dkt. No. 23 at 11 (arguing negligence claim is timely and listing complaint's allegations regarding discovery of the damaged TrimBoard).

As noted above, discovery may reveal that Cover had reason to discover his causes of action earlier, but he has adequately pleaded that he did not have reason to discover them until 2012, less than three years before he filed his complaint. However, neither party addresses whether the discovery rule applies to negligence claims under California or Virginia law. California law recognizes the discovery rule in this context. *See, e.g., Fox v. Ethicon Endo–Surgery, Inc.,* 35 Cal.4th 797, 809 (2005) ("Products liability claims brought under either negligence or strict liability theories are subject to delayed accrual under the discovery rule."). Virginia law, however, does not appear to recognize the discovery rule for negligence claims.[8] *See, e.g.*, *Andersson Gustafsson Advokatbyra KB v. eSCRUB Sys., Inc.*, 2011 WL 3954878, at *2 (E.D. Va. Sept. 7, 2011) ("there is no discovery rule in Virginia for negligence claims") *aff'd sub nom.* 473 F. App'x 228 (4th Cir. 2012). Accordingly, Cover's negligence claim survives if it is governed by California law but is DISMISSED WITH LEAVE TO AMEND to the extent that it is governed by Virginia law.

---

[8] Cover also does not argue that his negligence claim would be equitably tolled under Virginia law. It does not appear that it would. To trigger equitable tolling under Virginia law, a "plaintiff must show that the defendant somehow prevented plaintiff from filing suit within the statutory time period." *Roseboro v. Brown*, 2015 WL 631352, at *4 (E.D. Va. Feb. 12, 2015). Cover has pleaded no facts giving rise to a reasonable inference that Windsor prevented Cover from filing suit within the statutory period.

## II. COVER'S BREACH OF IMPLIED WARRANTY CLAIM FAILS UNDER CALIFORNIA LAW

Cover alleges that Windsor breached the implied warranty of merchantability because the TrimBoard "failed in its ordinary and intended use as an exterior trim product, given that it cannot withstand normal weather conditions and absorbs water and moisture, which cause it to prematurely deteriorate, rot, and decay." FAC ¶ 134. Windsor asserts that this claim is potentially governed by either California or Virginia law (where Windsor is based and manufactured the TrimBoard) or Rhode Island law (where Cover installed the TrimBoard). Windsor argues that the claim fails under any of those laws because Cover was not in contractual privity with Windsor. Cover apparently agrees that his implied warranty claim may be governed by California, Virginia, or Rhode Island law, but he does not argue which of those states' laws should apply. Rather, he contends that his claim survives regardless of which states' law applies because privity is not required under Virginia or Rhode Island law and California law recognizes two exceptions to the privity requirement which are met here: (i) where the plaintiff relied on written labels or advertisements of a manufacturer and (ii) where the plaintiff is the intended beneficiary of implied warranties in agreements linking a retailer and a manufacturer. In reply, Windsor argues that Cover has not satisfied the privity exception under California law. Windsor does not argue that privity is required under Virginia or Rhode Island law.

I will not determine which law applies to the implied warranty claim at this point since the parties have not presented that issue to me.[9] The implied warranty claim is DISMISSED WITH LEAVE TO AMEND to the extent that it is based on California law. First, California law recognizes an exception to the privity requirement where a purchaser relies on a manufacturer's representations (in which case the representations are treated as express warranties). *See, e.g., Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 696 (Cal. 1954) ("Another possible exception to the general rule is found in a few cases where the purchaser of a product relied on representations made by the manufacturer in labels or advertising material, and recovery from the manufacturer

---

[9] This analysis relates only to Cover's individual allegations. I discuss Windsor's argument that the class allegations are unmanageable because of the application of various states' laws below.

9

1    was allowed on the theory of express warranty without a showing of privity."). But, as discussed

2    in more detail below in the section regarding fraud, Cover has not sufficiently pleaded that he or

3    his agents relied on any particular representations by Windsor when purchasing the TrimBoard.

4          Second, Cover has not sufficiently pleaded that he is the intended beneficiary of implied

5    warranties between Windsor and the TrimBoard retailers because he has not identified where the

6    TrimBoard was purchased, from whom, or any agreements between Windsor and the retailers.

7    Accordingly, Cover has not alleged sufficient facts to trigger the exception, even assuming that

8    there is an intended beneficiary exception to the privity requirement. *See, e.g., In re MyFord*

9    *Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983 (N.D. Cal. 2014) ("Not all courts, however, have

10   recognized the third-party beneficiary exception.").

11         Windsor has presented no authority that there is a privity requirement under Virginia or

12   Rhode Island law. The implied warranty claim therefore survives to the extent that it is based on

13   Virginia or Rhode Island law.

**III.    COVER'S CLAIMS GROUNDED IN FRAUD ARE NOT PLEADED WITH PARTICULARITY**

      The parties agree that Cover's complaint sounds in fraud and must therefore be pleaded with particularity per Federal Rule of Civil Procedure 9(b), but they dispute whether he has satisfied this requirement. *See Yess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) ("When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim."). Windsor argues that Cover has not pleaded his claims with the requisite particularity because he does not allege that he or his unidentified agents ever actually read or heard any of Windsor's alleged misrepresentations before buying the TrimBoards in 2005. Cover responds that paragraphs 29–37, 58-60, 88, 90, 93-94, 107, 111–112, 117–118 of the first amended complaint allege when and what specific statements he and his agents relied on.

      The paragraphs that Cover references identify Windsor's alleged misrepresentations, but none of the paragraphs allege that Cover or his agents, who are not identified, actually relied on any particular misrepresentation, or when they did so. For example, paragraph 59 alleges that

1  Cover's "architect, contractor, and carpenter were all familiar with TrimBoard, including its

2  marketing materials and warranty when the decision was made to install TrimBoard on Plaintiff's

3  home." FAC ¶ 59. That is insufficient. To satisfy Rule 9(b), Cover must allege reliance on the

4  alleged misrepresentations. *See, e.g., Laster v. T-Mo bile USA, Inc*., 407 F.Supp.2d 1181, 1194

5  (S.D. Cal. 2005) (dismissing UCL claim where "Plaintiffs fail to allege they actually relied on

6  false or misleading advertisements").

7  Cover's UCL, FAL, CLRA, and negligence claims are grounded in fraud and are subject to

8  Rule 9(b). *See Yess*, 317 F.3d at 1107 (UCL, CLRA and FAL claims grounded in fraud were

9  subject to Rule 9(b)). Those claims are DISMISSED WITH LEAVE TO AMEND for failure to

10 plead fraud with particularity. At oral argument, counsel for Cover identified specific

11 representations that Cover's architect received and relied on in selecting TrimBoard. Cover may

12 add those allegations in an amended complaint.

### IV. MOTION TO STRIKE CLASS ALLEGATIONS

14 Windsor seeks to strike the class allegations and deny class certification on the grounds

15 that Cover's claims are not common to his proposed class in light of individualized defenses,

16 factual and legal questions, and choice-of-law determinations. At my invitation, the parties filed

17 supplemental briefs regarding choice-of-law for the class following oral argument. *See* Dkt. Nos.

18 33, 36.

19 Windsor asserts that the class claims are unmanageable and lack commonality because of

20 four key differences in state law: (i) how states measure class members' recovery or Windsor's

21 liability if class members contributed to their damage; (ii) whether states recognize an intended-

22 beneficiary exception to the privity requirement for implied warranty claims; (iii) whether states

23 require reliance for express warranty claims; and (iv) whether the Windsor trim boards could be

24 considered 'defective' under the appropriate law. It has provided a chart indicating the 50 states'

25 laws varied treatment of these issues. *See* Dkt. No. 33 at 11-38.

26 Windsor raises serious issues regarding the manageability and commonality of the class

27 claims, but I cannot resolve those issues on this record. Discovery is necessary to determine the

28 propriety of Cover's class allegations and whether his proposed class definitions are appropriate.

Indeed, in *Vinole v. Countrywide Home Loans, Inc.*, the case Windsor relies on, the Ninth Circuit instructed that preemptive motions to deny certification or to strike class allegations should only be entertained where relevant discovery has occurred. 571 F. 3d 935, 93 (9th Cir. 2009) (plaintiff "had conducted significant discovery and did not intend to propound any additional discovery seeking information from [defendant] regarding the propriety of class certification"). Unlike *Vinole*, discovery has not commenced and Cover has not conceded that he does not intend to propound discovery regarding his class allegations. The concerns that Windsor raises are precisely the types of concerns addressed in a motion for class certification.

Windsor's motion to strike class allegations is DENIED. It may raise the same arguments in opposition to a motion for class certification.

## CONCLUSION

Windsor's motion to dismiss the amended complaint in its entirety, or, in the alternative, to strike the class action allegations is GRANTED IN PART and DENIED IN PART. Dkt. No. 19. Cover's UCL, FAL, and CLRA, and negligence claims are DISMISSED WITH LEAVE TO AMEND. His claim for breach of the implied warranty is DISMISSED WITH LEAVE TO AMEND to the extent that it is governed by California law. The implied warranty claim survives to the extent that it is governed by Rhode Island or Virginia law. Cover has adequately pleaded a claim for breach of express warranty relating to Windsor's 10-year warranty for end and edge gluing. Any amended complaint shall be filed within 30 days of this order. Windsor's motion to strike the class allegations is DENIED.

**IT IS SO ORDERED**.

Dated: July 17, 2015

WILLIAM H. ORRICK
United States District Judge