UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MCLANE COVER,

        Plaintiff,

    v.

WINDSOR SURRY COMPANY, et al.,

        Defendants.

Case No.  14-cv-05262-WHO

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS SECOND AMENDED
COMPLAINT**

Re: Dkt. No. 49

## INTRODUCTION

Defendants Windsor Surry Company, d/b/a WindsorONE, and Windsor Willits Company, d/b/a Windsor Mill (collectively "Windsor") shifted positions in its motion to dismiss plaintiff McLane Cover's second amended complaint alleging misrepresentations regarding Windsor's housing trim products and now argues that Rhode Island law rather than California's applies to Cover's substantive claims (but not, oddly, with respect to damages).  Because Cover is a Rhode Island resident and the communication of the marketing materials, the purchase of the product and its deterioration all occurred in Rhode Island, I must apply Rhode Island law and dismiss Cover's California statutory claims.  His remaining claims for breach of express warranty, implied warranty of merchantability, and negligence are plausibly pleaded under Rhode Island law.  Windsor's motion to dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

In 2004 and 2005, Cover bought and installed WindsorONE trim board, manufactured by Windsor, on the exterior of his vacation home in Rhode Island.  SAC ¶¶74-76.  Trim boards are a finger jointed product, meaning that each board is made of several shorter boards that are joined together using finger joints and adhesive.  SAC ¶29.  Cover selected the product on the recommendations of his architect, contractor and carpenter, all of who were familiar with

United States District Court
Northern District of California

1    WindsorONE trim board, including its marketing materials and warranty.  SAC ¶67.  Specifically,

2    Cover's master carpenter provided him with a compact disc containing information regarding

3    Windsor products, including statements about its wood quality and performance.  SAC ¶¶68-71.

4        Cover routinely inspected his home and would hire a carpenter to address any discovered

5    maintenance issues.  SAC ¶77.  In 2012, Cover's carpenter alerted him to signs of rot and

6    deterioration of the installed trim board, noting that "areas were so soft that a finger could press

7    through it."  SAC ¶80.  Shortly, thereafter he made a warranty claim to Windsor.  Windsor's

8    express limited warranty provides:

9        <u>Limited Warranty</u>

10        Windsor Mill guarantees WindsorONE's end and edge gluing for 10 years and its priming for 5 years.  Windsor Mill will replace, without charge, any WindsorONE product found to be defective within that time.  Such replacement is the exclusive remedy for any

11        defect, with no consequential damages recoverable.  See

12        WindsorONE Warranty at www.WinsorONE.com.

13    Dkt. No. 50.[1]  The warranty on Windsor's website reads:

14        Limited Warranty:

15        Windsor Mill guarantees WindsorONE's end and edge-gluing for 10 years and its primer for 5 years.  Windsor Mill will replace, without charge, any WindsorONE product that is installed according to

16        directions and fails to meet this warranty within that time.  Such

17        replacement is the exclusive remedy for breach of warranty with no

18-28 [1] Windsor's request for judicial notice of Exhibit 1, the warranty, is GRANTED.  *See Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1103 (N.D. Cal. 2007) (taking judicial notice of an express warranty in a consumer protection suit).  "Under the incorporation-by-reference doctrine, courts may consider relevant documents not physically attached to the plaintiff's pleading if (1) the contents are central to the allegations and (2) no party questions the authenticity of the documents."  *Gross v. Symantec Corp.*, No. 12-cv-0154-CRB, 2012 WL 3116158, at *10 (N.D. Cal. July 31, 2012) (internal quotation marks and citations omitted).  Here, although Cover disputes the request for judicial notice, he does not dispute the accuracy of the warranty and quotes directly from it in his complaint.  *See* SAC ¶¶37-38.  Judicial notice of Exhibit 2, a document from Windsor's website, is DENIED.  This document is not incorporated into Cover's complaint, he does not quote from it, and there is no objective evidence by which the court can determine the accuracy of the statements therein or whether it existed on Windsor's website at the time of Cover's purchases.  Judicial notice of Exhibits 3 and 4, technical standards published by American Society of the International Association for Testing and Materials, is GRANTED because the standards can be accurately and readily determined, and their accuracy cannot be, and has not been, reasonably questioned.  *See* Fed. R. Evid. 201(b).  Finally, Exhibit 5, the unpublished judicial opinion in *Hoekman v. Tamko Building Products*, 14-cv-1581 (E.D. Cal. August 26, 2015), is GRANTED as to its existence but not with regard to the truth of the facts asserted therein.  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (a court may take judicial notice of another court's opinion, but not of the truth of the facts recited therein).]

consequential or other damages recoverable.

Warranty Disclaimer:
Windsor Mill's guarantee is limited to the above Limited Warranty. In Windsor Mill's opinion, its statements about WindsorONE products on this website and in printed literature are believed to be accurate, but do not constitute separate warranties. There are no warranties, expressed or implied, including merchantability beyond the above Limited Warranty.

Additionally, Cover alleges that Windsor made the following additional representations:

- "Think of WindsorONE end and edge glued boards as turbo wood. Not only does it have all the great qualities of wood, but in addition, it benefits from structural stability, decreased cupping, warping or twisting, …, and it's defect free." SAC ¶32.

- "WindsorONE is free of lumber defects." Other woods "have many defects which can include wane, knots, pitch, stain, bowing, splits, checking, and worm holes. Solid sawn lumber is prone to cup, twist, and warp. WindsorONE is end and edge glued, making it far more resistant to cupping, twisting, and warping." SAC ¶71.

- That Redwood and Cedar products "posses [sic] no advantages over WindsorONE, and in infact [sic] are inferior when it comes to performance." SAC ¶71.

- That WindsorONE trim board exceeds Wet Use Classification under the ASTM D5572-95 standard, stating that, "WindsorONE exceeds the standards set by this test, and that's why our joints are stronger than the wood itself, and waterproof!" SAC ¶33.

- That Windsor's trim board "materials can provide you with the durability and long term performance you require in a finger join trim board – free of defects and the potential callback they can cause." SAC ¶31.

Presently, Cover's fascia trim exhibits "significant swelling and rotting" and there is also "significant swelling and rotting to the vertical boards" on his home. SAC ¶¶81-82. Additionally, the soffits, corner boards and bandboards on Cover's home have exhibited damage. Cover alleges that the trim board's defects have resulted in significant water damage and rotting to the structure itself. SAC ¶86. Windsor denied Cover's warranty claim, finding the complaint to be "not warrantable," and offered Cover a settlement that he found unreasonable. SAC ¶¶90-91.

Cover asserts that contrary to Windsor's representations regarding the high quality of

United States District Court
Northern District of California

3

wood used to manufacture WindsorONE trim board, it is instead manufactured using low cost, low performance Radiata pine that has no natural rot resistance and was not treated to eliminate the wood as a "food source for fungi". SAC ¶¶40-42. Further, he alleges that Windsor's claim that their glue meets ASTM D5572-95 standard is insufficient to make it waterproof. SAC ¶¶44-45. Instead, a more rigorous D2559 standard is needed for year-round exterior applications. As a result of these defects, "[t]rim [b]oard installed on structures in Rhode Island and throughout the United States has prematurely decayed, rotted, split, warped and discolored." SAC ¶47.

Cover alleges seven causes of action: (1) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Profs. Code § 17500, *et seq.*; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code § 17200, *et seq.*; (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (4) breach of express warranty; (5) breach of implied warranty of merchantability; (6) negligence; and (7) declaratory and injunctive relief. He seeks to represent a nationwide class defined as: "All persons and entities in the United States that own or owned homes, apartments, office buildings or other structures in which Trim Board is or was installed." SAC ¶15. Alternatively, he seeks to define the class more narrowly as: "All persons and entities in Rhode Island or Massachusetts who own or owned homes, apartments, office buildings or other structures in which Trim Board is or was installed." SAC ¶18.

## LEGAL STANDARD

### I.    MOTION TO DISMISS

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering whether the complaint is sufficient to state a claim, the court accepts as true all factual allegations contained in the complaint. *Id.* However, the court need not accept as true "allegations that contradict matters

properly subject to judicial notice." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted).  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*  "[I]t is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

## II.      HEIGHTENED PLEADING STANDARD FOR FRAUD OR MISTAKE

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To satisfy this standard, a plaintiff must identify "the time, place, and content of [the] alleged misrepresentation [s]," as well as the "circumstances indicating falseness" or "manner in which the representations at issue were false and misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (internal quotation marks and modifications omitted).  The allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

## DISCUSSION

Windsor makes eight primary arguments: (1) choice of law analysis dictates that Rhode Island law applies to all relevant claims, requiring dismissal of Cover's FAL, UCL, CLRA, express warranty, and implied warranty claims; (2) Cover's FAL, UCL, and CLRA claims should also be dismissed because none of Windsor's marketing statements are actionable; (3) Cover's breach of implied warranty of merchantability is prohibited by Windsor's express warranty and is time barred; (4) Cover's claim for breach of express warranty claim fails because Windsor's statements are mere puffery; (5) Cover's FAL, UCL, CLRA, and negligence claims are not pleaded with sufficient particularity; (6) Cover's declaratory relief should be dismissed because adequate remedy exists under other causes of action; (7) Cover lacks standing for his request for injunctive relief; and (8) Windsor's limited warranty precludes Cover's claim for consequential damages, punitive damages, and restitution.

United States District Court
Northern District of California

United States District Court
Northern District of California

# I.      CHOICE OF LAW ANALYSIS

## A.      Federal Rule of Civil Procedure Rule 12(g) and Judicial Estoppel

In its motion, Windsor puts forth a choice of law analysis of Cover's claims.  Cover responds that, at this juncture, Windsor's choice of law analysis is prohibited by Rule 12(g) and judicial estoppel.

Rule 12(g) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g).  Rule 12(h)(2), in turn, allows a party to raise a defense of failure to state a claim: "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."  Fed. R. Civ. P. 12(h)(2).  Therefore, under Rule 12(g)(2) and Rule 12(h)(2), a party that seeks to assert a defense that was available but omitted from an earlier Rule 12 motion can only do so in a pleading, a Rule 12(c) motion, or at trial.

While Rule 12(g)(2) "technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion," "courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy." *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. 10-cv-05696-CRB, 2011 WL 2690437, at *2 n.1 (N.D. Cal. July 8, 2011); *see also Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir. 1988) ("[C]ourts have discretion to hear a second motion under Rule 12(b)(6) if the motion is not interposed for delay and the final disposition of the case will thereby be expedited.").  Cover argues that because Windsor could have made its argument in previous motions, Rule 12(g) precludes it from now asserting that Rhode Island law applies.  But judicial economy favors proceeding with the motion on its merits despite its technical deficiencies.  Disregarding the choice of law analysis would neither resolve the underlying issues nor lead to a speedier trial; Windsor would be entitled to renew its arguments in a Rule 12(c) motion for judgment on the pleadings after filing an answer.  Because Windsor is entitled to raise these issues sooner or later, to narrow the issues I will address them now.

For similar reasons, the argument is not judicially estopped.  "Judicial estoppel is an

equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Cover contends that Windsor is now taking a position that is "clearly inconsistent" with its prior position. This is true; Windsor has reversed its position. In the June 3, 2015 hearing on Windsor's previous motion to dismiss, Windsor conceded that California law would be appropriate for Cover's California statutory consumer protection claims. In accordance with the parties' representations, I stated in my previous order that "[t]he parties agree that the UCL, FAL, and CLRA claims are governed by California law." Dkt No. 37.

While Windsor's current position is inconsistent with its previous one, it gains no ultimate advantage. The continued presence of Cover's California statutory claims at this stage does not guarantee their ultimate success. Cover argues that it is prejudiced by Windsor's inconsistent positions because it relied on its earlier position in pleading the claims contained in the SAC. However, Cover has made no showing that Windsor could not renew its arguments on a motion for summary judgment. Analyzing Cover's claims now could save both parties time conducting discovery on ill-fated claims.

Neither Rule 12 nor judicial estoppel prevents a consideration of the choice of law analysis at this juncture.

**B.  Deferral of Choice of Law Analysis until Class Certification**

Windsor contends that under *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) Rhode Island law should govern Cover's claims. Cover asserts that a choice of law analysis is premature at this juncture and that I should defer considerations of these questions until class certification.

In *Mazza*, a putative class sued Honda for violations of the CLRA, UCL, and FAL. Honda was headquartered in California and the alleged misrepresentations emanated from California, but the transaction that caused the alleged injury (i.e., the lease or purchase of a Honda automobile), had occurred in other states for the majority of class members. The Ninth Circuit reversed the district court's certification of a national class after concluding that, under California's choice of law rules, "each class member's consumer protection claim should be governed by the consumer

1  protection laws of the jurisdiction in which the transaction took place." *Mazza*, 666 F.3d at 594.

2       Cover argues that application of *Mazza* at this juncture would be premature.  Cover cites

3  cases within this district that have declined to apply choice of law analysis at the pleading phase,

4  instead deferring the issue until class certification.  *See, e.g.*, *Doe v. Successfulmatch.com*, No. 13-

5  cv-03376-LHK, 2014 WL 1494347, at *7 (N.D. Cal. Apr. 16, 2014); *Clancy v. The Bromley Tea*

6  *Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013); *In re iPhone 4S Consumer Litig.*, No. 12-cv-01127-

7  CW, 2013 WL 3829653, at *8-9 (N.D. Cal. July 23, 2013).  These courts have reasoned that the

8  choice of law analysis is a fact-specific inquiry which requires a more developed factual record

9  than is generally available on a motion to dismiss.

10       Other cases in this district and elsewhere disagree, and in the circumstances of this case it

11  is not appropriate to delay until class certification to consider the choice of law issue.  Although

12  *Mazza* was decided at class certification, "the principle articulated in *Mazza* applies generally and

13  is instructive even when addressing a motion to dismiss."  *Frezza v. Google Inc.*, No. 5:12-cv-

14  00237-RMW, 2013 WL 1736788, at *6 (N.D. Cal. Apr. 22, 2013).  In analogous cases, *Mazza* is

15  "not only relevant but controlling," even at the pleading phase.  *Id.* at *5.  Multiple California

16  district courts have applied *Mazza* at a motion to dismiss stage.  *See id.* at *6 (applying *Mazza* at a

17  motion to dismiss stage); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903

18  F. Supp. 2d 942, 965 (S.D. Cal. 2012) (same); *Granfield v. NVIDIA Corp.*, No. 11-cv-05403-JW,

19  2012 WL 2847575, at *3 (N.D. Cal. July 11, 2012) (same); *Waller v. Hewlett-Packard Co.*, No.

20  11-cv-0454, 2012 WL 1987397, at *1 (S.D. Cal. June 4, 2012) (same); *Horvath v. LG Elecs.*

21  *Mobilecomm U.S.A., Inc.*, No. 11-cv-01576, 2012 WL 2861160, at *3 (S.D. Cal. Feb. 13, 2012)

22  (same).

23       While choice of law analysis requires a fact-specific inquiry, this does not necessarily

24  mean that it can never be conducted on a motion to dismiss.  Unlike many other cases when choice

25  of law analysis was deferred due to a lack of briefing, both parties here have had multiple chances

26  to brief the choice of law issues.  Additionally, this is not a case in which further development of

27  the factual record is reasonably likely to materially impact the choice of law determination.

28  Discovery will not uncover information relevant to whether Cover may personally maintain claims

United States District Court
Northern District of California

under California law.  Cover's residency and the location of the pertinent details regarding his claims are known.  It is not necessary to delay consideration of the choice of law issues until class certification.  I therefore turn to the choice of law analysis.

### C.     Choice of Law

A federal court sitting in diversity applies the choice of law rules of the forum state.  *See Mazza*, 666 F.3d at 589; *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010).  California courts use a "government interest" test that involves a three-part inquiry:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87-88 (2010) (internal citations and quotation marks omitted).  Windsor bears the burden of demonstrating "that foreign law, rather than California law, should apply to class claims" in a California choice of law analysis.  *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921 (2001).

### i.     Material Differences

"The fact that two or more states are involved does not itself indicate that there is a conflict of law problem."  *Id.* at 919-20.  A problem only arises if differences in state law are material, that is, if they make a difference in this litigation.  *Id.* at 920.  Windsor argues there are "stark differences" between the consumer protection laws of California and Rhode Island.  Mot. at 7 [Dkt. No. 49].  I agree.

California and Rhode Island consumer protection statutes differ regarding the types of damages available, reliance requirements, and statutory exemptions.  *Compare* Rhode Island's

1    Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *with* Cal. Bus. &

2    Profs. Code § 17500 (FAL) *and* Cal. Bus. & Profs. Code § 17200 (UCL) *and* Cal. Civ. Code §

3    1750 (CLRA).  For example, Rhode Island law "provides a private right of action to recover actual

4    and punitive damages and equitable relief for violations of its provisions."  *Park v. Ford Motor*

5    *Co.*, 844 A.2d 687, 693 (R.I. 2004) (internal quotation marks and citations omitted).  Under

6    California law, damages are not available under the UCL and plaintiffs are generally limited to

7    injunctive relief and restitution.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

8    1134, 1144 (2003) (holding that damages are not available under the UCL); *Bank of the West v.*

9    *Superior Court*, 2 Cal. 4th 1254, 1266 (1992) (same).

10           Additionally, while California and Rhode Island statutes both include a four-year statute of

11    limitations for express warranty claims, Cal. Com. Code § 2725 and R.I. Gen. Laws § 6A-2-725,

12    courts in each jurisdiction differ over when the statute of limitations will be extended beyond the

13    four-year baseline to cover promises of "future performance."  In California, the future

14    performance exception "applies only when the future warranty refers to a specific future time

15    period," i.e., "only when the seller explicitly has agreed to warrant its product for a defined period

16    of time."  *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 130 (Ct.

17    App. 2008).  In Rhode Island, on the other hand, whether an express warranty includes promises

18    of "future performance" is a "question of material fact for the jury to decide."  *Gail Frances, Inc.*

19    *v. Alaska Diesel Elec., Inc.*, 62 F. Supp. 2d 511, 516 (D.R.I 1999).

20           Implied warranty law in each state also differs with regard to privity requirements.  Rhode

21    Island law provides that "[a] seller's or a manufacturer's or a packer's warranty, whether express

22    or implied . . . extends to any person who may reasonably be expected to use, consume, or be

23    affected by the goods and who is injured by breach of the warranty."  R.I. Gen. Laws § 6A-2-318.

24    California's statute is silent regarding privity for implied warranties, Cal. Com. Code § 2314,

25    prompting the courts to maintain the privity requirement for implied warranty claims.  *See*

26    *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (requiring that a plaintiff "stand in

27    vertical contractual privity with the defendant," and defining privity as when a buyer and seller

28    "are in adjoining links of the distribution chain"); *Osborne v. Subaru of America, Inc.*, 198

*United States District Court*
*Northern District of California*

1    Cal.App.3d 646, 656 n.6 (Ct. App. 1988) (same).

2         In accordance with *Mazza*, I am persuaded that these differences in California and Rhode

3    Island law are material and warrant consideration of each jurisdiction's interest in applying its

4    laws. *Mazza*, 666 F.3d at 591 (finding that differences with regards to scienter and reliance were

5    material for the purposes of the choice of law analysis).

6              **ii.      Interests of Each Jurisdiction**

7         "Every state has an interest in having its law applied to its resident claimants." *Id.* at 592

8    (internal citations, modifications, and quotation marks omitted).  Rhode Island has a strong

9    interest in applying its laws in this case.  Cover is a Rhode Island resident and, as such, Rhode

10   Island has an interest in applying its laws to him.  *See* SAC ¶7.  While Cover seeks to represent a

11   more numerous class, no other plaintiff has been named.

12        Rhode Island also has a valid interest in "setting the appropriate level of liability for

13   companies conducting business within its territory" in order to "create a more favorable business

14   climate for the companies that the state seeks to attract to do business in the state." *Id.* at 592.  A

15   state's interest applies not only to in-state companies but also to out-of-state companies which

16   operate within its jurisdiction.  *McCann*, 48 Cal.4th at 97; *Sullivan v. Oracle Corp.*, 51 Cal. 4th

17   1191, 1205 (2011) ("We do not doubt the premise that a state can properly choose to create a

18   business-friendly environment within its own boundaries.").  As applied here, Rhode Island has a

19   valid interest in creating an environment catered to its own interests that applies to companies,

20   such as Windsor, who do business in its state.

21        In an effort to apply California law to its claims, Cover argues that the "emanation

22   doctrine" governs the choice of law analysis.  Opp. at 11 [Dkt. No. 52].  Cover asserts that because

23   Windsor's marketing materials and warranty emanated from California, the company is

24   headquartered in California, and it designs its products in California, California has a compelling

25   interest in applying its law.  *Id.*  However, none of Cover's supporting cases parallel its factual

26   situation.  In each, the claims and plaintiffs had more significant contact with California than in

27   this case.  *See Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 613 (1987) (allowing

28   application of California law where a "significant number" of the disputed class members were

United States District Court
Northern District of California

United States District Court
Northern District of California

California residents); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001) (finding that application of California law to a class settlement was appropriate when "substantial numbers of class members are located in California"). Here, there are no currently identified plaintiffs that are California citizens or are located in California. Cover is the sole named plaintiff. He is not a California resident.

Additionally, the Ninth Circuit rejected Cover's emanation argument in *Mazza*. There, the district court relied on some of the same cases as Cover to agree with the plaintiffs that "so long as the alleged anti-consumer behavior 'emanated' from California, California's more favorable laws 'may properly apply to benefit of nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery.'" *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 623 (C.D. Cal. 2008). Although the plaintiffs initially successfully sought certification of a nationwide class, on appeal the Ninth Circuit concluded that applying California law to non-residents who purchased their products outside of California was unwarranted. The Ninth Circuit held that "[t]he district court did not adequately recognize that each foreign state has an interest in applying its law to transactions within its borders and that, if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce." *Mazza*, 666 F.3d at 593. Specifically, the "district court's reasoning elevated all states' interests in consumer protection to a superordinate level, while ignoring or giving too little attention to each state's interest in promoting business." *Id.* Allowing California law to trump other states' interests would be inconsistent with the "principle of federalism that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *Id.* at 591.

Here, "California's interest in applying its law to residents of foreign states is attenuated." *Id.* at 594. California recognizes that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *Id.* at 593. California considers the "place of the wrong" to be the state where the last event necessary to make the actor liable occurred. *Id.* The last events necessary for liability in this case – the communication of the marketing materials, the purchase of the products, and product deterioration – all occurred in

12

Rhode Island.  Identifying these transactions as the events that trigger liability is consistent with other courts that have applied *Mazza*'s analysis.  *See, e.g.*, *Frezza*, 2013 WL 1736788, at *7 (holding that North Carolina law applied despite the fact that the defendant was headquartered in California and the alleged fraudulent representations originated in California because the transactions at the center of the dispute occurred in North Carolina); *Granfield*, 2012 WL 2847575, at *3 (dismissing California state law consumer protection claims arising from a transaction in Massachusetts by a Massachusetts named plaintiff despite the defendant having its principal place of business in California); *Littlehale v. Hain Celestial Grp., Inc*., No. 11-cv-6342-PJH, 2012 WL 5458400, at *1-2 (N.D. Cal. July 2, 2012) (dismissing California common law fraud claim based on transactions that occurred in Pennsylvania by Pennsylvania named plaintiff).

Accordingly, Rhode Island's interest in the application of its laws to transactions between its residents and corporations doing business within its state outweighs California's interest.

## II.   APPLICATION OF RHODE ISLAND LAW

### A.   Cover's CLRA, UCL, and FAL Claims Fail

Because Rhode Island law applies to Cover's claims, his FAL, UCL, and CLRA claims are DISMISSED. [2]

### B.   The Implied Warranty Claim Survives under Rhode Island Law.

Under Rhode Island law, Windsor argues that Cover's implied warranty claim fails for two reasons.  First, Windsor contends that the disclaimer in Windsor's express warranty that reads, "[t]here are no warranties, express or implied, including merchantability, beyond the above Limited Warranty," Dkt. No. 50, Ex. 1, forecloses the creation of any implied warranties arising out of law.  Mot. at 17-18.  Second, it argues that Rhode Island's four-year statute of limitations for implied warranties bars this action, and that Cover has failed to adequately plead fraudulent concealment to establish equitable tolling of the four-year bar.  Mot. at 18-19.  Cover argues this limitation is impermissible because the warranty is unconscionable and therefore void.  *See* SAC

---

[2] To the extent that Cover is able to certify a California subclass, I leave open the possibility of applying California law to that subclass.  *See Mazza*, 666 F.3d at 594 (allowing for the possibility of certifying a "class with members more broadly but subclasses for class members in different states, with different jury instructions for materially different bodies of state law.").

United States District Court
Northern District of California

¶59.  Because I find both of Windsor's arguments to be unpersuasive, I need not reach the unconscionability analysis.

Windsor relies on Section 6A-2-316(2) of Rhode Island law that provides, in relevant part:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and, in case of a writing, must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

R.I. Gen. Law § 6A-2-316.  Windsor cites to *Star-Shadow Productions, Inc. v. Super 8 Sync Sound System*, 730 A. 2d 1081 (R.I. 1999), which interpreted section 6A-2-316 for the proposition that an implied warranty claim can be defeated in Rhode Island by "a general statement that no warranties exist beyond those contained in the document."  *Id.* at 1084.

But the existence of a general statement limiting liability is not enough.  Not addressed in *Star-Shadow*, where the disclaimer appeared directly on the price sheets provided to plaintiff and the boxes in which plaintiff received delivery of the product, is the additional requirement under Rhode Island law that such a disclaimer be "conspicuous."  R.I. Gen. Laws § 6A-2-316(2); *see also E. Side Prescription Ctr., Inc. v. E.P. Fournier Co.*, 585 A.2d 1176, 1180 (R.I. 1991) ("We agree that to be effective, a disclaimer of warranty must be conspicuous.").  In *East Side Prescription*, the Rhode Island Supreme court found that the disclaimer was "conspicuous as it appeared in all capital letters in close proximity to [plaintiff's] signature, and the order containing the disclaimer gave [plaintiff] fair and reasonable notice that the document was not binding to either party."  585 A.2d at 1180.  Further, a Rhode Island district court found a disclaimer to be sufficiently conspicuous when included in a contract for sale between two parties who were proactively bargaining, and where the disclaimer was printed in all capital letters: "THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED AND SELLER SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE."  *Hart Engineering Co. v. FMC Corp.*, 593 F. Supp. 1471, 1474 (D.R.I. 1984).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Neither party has addressed the conspicuousness of the warranty language in their briefs.

2  The limited warranty language appears at the bottom of a two-page document entitled

3  "Recommended Handling, Storage, & Installation Practices" and within the "Warranty" section of

4  Windsor's website. Dkt. No. 50, Exh. 1.  The limited warranty language in the recommended

5  practices document is located at the very bottom of the last page, in materially indistinguishable

6  font from the rest of the document.  Unlike the warranties at issue in *Star-Shadow*, *East Side*

7  *Prescription*, or *Hart Engineering*, Windsor's limited warranty is not in all capital letters,

8  contained within contracts or signed documents between Cover and Windsor, or printed on the

9  product packing.  At oral argument, Windsor stated that the two page document containing the

10  limitation language was provided to all consumers as the installation instructions.  It asserted that

11  this language would therefore be read by all consumers and that it is inconsistent for Cover to

12  argue that he relied on certain aspects of the marketing materials without also being aware of the

13  limitation language.  Perhaps those allegations will be proven later in this litigation, but this case

14  is still at the pleadings stage.  At this juncture, the inquiry is whether Cover has stated a plausible

15  claim under Rhode Island law.  He has.

16    Windsor's second argument is that because Cover installed Windsor's products in 2005,

17  Rhode Island's four-year statute of limitations, R.I. Gen. Laws § 6A-2-725, bars this action.  Mot.

18  at 18-19; SAC ¶65.  Under section 6A-2-725, "an action for breach of contract for sale must be

19  commenced within four years after the cause of action has accrued."  R.I. Gen. Laws § 6A-2-725.

20  "[A] cause of action for breach of implied warranty accrues when tender of delivery is made."

21  *Gail Frances*, 62 F. Supp. 2d at 517.  However, section 6A-2-725 also clarifies that it "does not

22  alter the law on tolling of the statute of limitations."  R.I. Gen. Laws § 6A-2-725.

23    Rhode Island law provides that for concealed causes of action:

24    If any person, liable to an action by another, shall fraudulently, by
    actual misrepresentation, conceal from him or her the existence of
25    the cause of action, the cause of action shall be deemed to accrue
    against the person so liable at the time when the person entitled to
26    sue thereon shall first discover its existence.

27  R.I. Gen. Law § 9-1-20.  In *Ryan v. Roman Catholic Bishop of Providence*, 941 A. 2d 174 (R.I.

28  2008), the Rhode Island Supreme Court directly addressed the scope of the fraudulent

1    concealment doctrine set out in section 9-1-20.  To establish fraudulent concealment, "a plaintiff

2    must show: (1) that the defendant made an actual misrepresentation of fact; and (2) that, in making

3    such misrepresentation, the defendant fraudulently concealed the existence of plaintiff's causes of

4    action." *Id.* at 182.  "The key consideration is whether or not the defendant fraudulently

5    misrepresented material facts, thereby misleading the plaintiff into believing that no cause of

6    action existed." *Id.* at 183.

7         Windsor contends that equitable tolling does not apply because "[Cover] has not pleaded

8    reliance on any purported fraudulent concealment here."  Mot. at 19.  I disagree.  For the purposes

9    of a motion to dismiss, Cover has plausibly pleaded fraudulent concealment under Rhode Island

10   law by alleging, "Defendants concealed [the trim board's] defective nature from Plaintiff and the

11   Class by affirmatively marketing and advertising its Trim Board as being proper for exterior use,

12   as building trim."  SAC ¶94.  Cover alleges that he and other class members "did not and could

13   not have known" that the trim board was made with improper materials because this fact was "not

14   disclosed to them and was not apparent from a superficial inspection."  SAC ¶95.  Consistent with

15   *Ryan*, Cover has alleged  that Windsor's affirmative marketing of its product as "being proper for

16   building use" was an actual misrepresentation of fact, and that such misrepresentation "concealed

17   the defective nature" of Windsor's product, thereby concealing Cover's cause of action.  *See Ryan*,

18   941 A. 2d at 182.  The statute of limitations does not bar the implied warranty claim at this stage.[3]

19        Windsor's motion to dismiss the implied warranty claim is DENIED.

20   **C.    The Express Warranty Claim Survives under Rhode Island Law.**

21        Windsor argues that under Rhode Island law, its marketing statements and advertisements

22   are "mere puffery."  Mot. at 16.  Windsor relies on Rhode Island law which provides that "an

23   affirmation merely of the value of the goods or a statement purporting to be merely the seller's

---

[3] In its Reply, Windsor also asserts that I previously found that Cover had failed to plead equitable tolling because "Cover has pleaded no facts giving rise to a reasonable inference that Windsor prevented Cover from filing suit within the statutory period."  Dkt No. 37 at 8, n.8.  But Windsor's selective quotation on my prior order is misleading because the inquiry at issue there was whether Cover adequately pleaded equitable tolling under Virginia law.  *See id.*  Whether Cover has met his burden under Rhode Island law, however, is a different inquiry.  For the reasons already explained above, Cover's allegations are sufficient to satisfy his burden under Rhode Island law at this stage.

United States District Court
Northern District of California

opinion or commendation of the goods does not create a warranty" R.I. Gen. Laws § 6A-2-313(2).  However, the cases Windsor cites involve verbal communications, not written warranties, or do not address this section of Rhode Island law.

Both *Keenan v. Cherry & Webb*, 131 A. 309 (R.I. 1925) and *Ralston Dry-Wall Co., v. U.S. Gypsum Co.*, 740 F. Supp. 926 (D.R.I. 1990) involve verbal communications.  In *Keenan*, the Rhode Island Supreme Court considered a representation by a saleswoman that a coat "was a good coat," that it would "wear very good," and that plaintiff "would not be sorry if she bought it."  131 A. at 310.  The *Keenan* court held that because the case involved "proper dealer's talk," a finding of liability "would preclude fair commendation by a shopkeeper of his goods or expressions of honest opinion about their value or wearing qualities."  *Id.*  Similarly, in *Ralston*, the court found no express warranty where in conversations between the parties' employees, the defendant's representative offered verbal "advice" and "guidance" during a meeting and plaintiff did not rely on such statements.  740 F. Supp. at 930.  Here, no similar verbal communications are at issue and Cover has explicitly pleaded reliance on the written affirmations.  *See* SAC ¶¶35, 69, 71, 104, 108, 133.

Windsor's remaining case, *Salk v. Alpine Ski Shop, Inc*., 342 A.2d 622 (1975), does not save Windsor's argument.  *Salk* does not directly address section 6A-2-313(2) of Rhode Island law, on which Windsor relies.  And *Salk*'s reasoning does not help Windsor at this stage.  *Salk* considered "solely" where the trial court erred in granting the defendant's motion for a directed verdict.  342 A.2d at 625.  After full examination of "uncontroverted evidence" presented at trial, the *Salk* court concluded that defendant's warranty was not the "blanket guarantee" plaintiffs argued.  *Id.* at 626.  The current record in this case does not contain a similar quantum of information in order for me to make an analogous determination.

Windsor's cases do not demonstrate that its marketing statements concern "merely the value of goods" or are "merely the seller's opinion or commendation of the goods" such that they do not constitute a warranty under Rhode Island law.  Here, Cover has alleged the existence of multiple, written statements including affirmations describing Windsor's products as "defect free," "free of lumber defects," "more resistant to cupping, twisting, [] warping," "suitable for all interior

1   and exterior applications," and "exceed[ing]" American Society of the International Association

2   for Testing and Materials standards.  SAC ¶¶71, 104.  Windsor has not carried its burden at this

3   stage to demonstrate that these statements constitute mere puffery under Rhode Island law.

4          Windsor also argues that Rhode Island law disallows express warranty claims arising out

5   of promotional materials when a seller has explicitly disclaimed such express warranties.  Rhode

6   Island law provides, in relevant part:

7               Words or conduct relevant to the creation of an express warranty
                and words or conduct tending to negate or limit warranty shall be
8               construed *wherever reasonable* as consistent with each other; but
                subject to the provisions of this chapter on parol or extrinsic
9               evidence (§ 6A-2-202), negation or limitation is inoperative to the
                extent that such construction is unreasonable.
10
    R.I. Gen Laws § 6A-2-316(1) (emphasis added).  Windsor points to the Warranty Disclaimer on
11
    its website, which states, in part, "In Windsor Mill's opinion, its statements about WindsorONE
12
    products on this website and in printed literature are believed to be accurate, but do not constitute
13
    separate warranties."  Dkt. No. 50, Exh. 1.  But Windsor has made no argument, nor cited any case
14
    law, to demonstrate the reasonableness of limiting Windsor's liability while, at the same time,
15
    affirming the accuracy of its marketing statements.  Dismissal of the express warranty claim on
16
    these grounds would be inappropriate at this stage without further information regarding the
17
    reasonableness of limiting Windsor's liability.
18
           Windsor's motion to dismiss the express warranty claim is DENIED.
19
    **III.    COVER'S CLAIMS ARE PLEADED WITH SUFFICIENT PARTICULARITY**
20
           Windsor continues to assert that despite the changes in the SAC, Cover has failed to allege
21
    his UCL, FAL, CLRA, and negligence claims with the required specificity.  Fraud-based claims
22
    are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b).
23
    Accordingly such claims must specifically plead the "who, what, when, where and how" of the
24
    misconduct charged.  *Vess v. Ciba-Geigy*, 317 F. 3d 1097, 1106 (9th Cir. 2003).  Rule 9(b)
25
    requires that "the circumstances constituting the alleged fraud be specific enough to give
26
    defendants notice of the particular misconduct so that they can defend against the charge and not
27
    just deny that they have done anything wrong."  *Id.* (internal citations, modifications, and
28

United States District Court
Northern District of California

18

1   quotation marks omitted).  In addition, the plaintiff must allege that he actually relied on the false

2   or misleading information.  *Id.*; *see also Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194

3   (S.D. Cal. 2005) (dismissing fraud based claims when plaintiffs failed to allege they actually relied

4   on the false or misleading advertisements).

5       Cover's allegations are sufficient to meet this standard.[4]  In the SAC, Cover specifically

6   alleges that his carpenter, identified as Jeff Moss, relied on a compact disc containing information

7   about WindsorONE products.  SAC ¶68.  Cover also alleges that his "architect was very strongly

8   influenced by Defendant's marketing materials when specifying WindsorONE on Plaintiffs' [sic]

9   home."  SAC ¶69.  Cover relied on the information provided to his architect and carpenter in

10   making his decision to purchase Windsor products.  *Id.*  The SAC also identifies in detail the

11   various affirmations contained within Windsor's marketing materials.  SAC ¶71.  This is sufficient

12   to fulfill the heightened pleading requirements under Rule 9(b).

## IV.   INJUNCTIVE RELIEF

14       Cover requests in his Prayer for Relief that the court "[e]njoin the Defendants from

15   committing the violations of law alleged herein."  SAC at p.30.  Windsor argues that injunctive

16   relief is improper because Cover has failed to allege that he faces a threat of repeated injury.  Mot.

17   at 19-20.  Cover's opposition contains no response to this aspect of Windsor's argument.

18       A plaintiff seeking injunctive relief from a federal court must establish Article III standing

19   by demonstrating that "he has suffered or is threatened with a concrete and particularized legal

20   harm," and that there is "a sufficient likelihood that he will again be wronged in a similar way."

21   *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal quotation marks and

22   citations omitted).  This requires the plaintiff to show a "real and immediate threat of repeated

23   injury" that is "likely to be redressed by the prospective injunctive relief."  *Id.* (internal quotation

24   marks omitted).  "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they

25   may not represent a class seeking that relief."  *Hodgers–Durgin v. de la Vina*, 199 F.3d 1037,

26   1045 (9th Cir. 1999).  To demonstrate standing in a consumer protection class action such as this

---

[4] This inquiry focuses on Cover's negligence claim as his FAL, UCL, and CLRA claims are dismissed on other grounds.

United States District Court
Northern District of California

1   one, the named plaintiff "must allege that he intends to purchase the products at issue in the

2   future." *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29,

3   2014). "Allegations that a defendant's continuing conduct subjects unnamed class members to the

4   alleged harm is insufficient if the named plaintiffs are themselves unable to demonstrate a

5   likelihood of future injury." *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 626 (N.D. Cal.

6   2011).

7        In *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1015 (N.D. Cal. 2014), I considered a similar

8   issue and determined that a plaintiff who brought a consumer class action alleging that he

9   purchased a product based on defendant's misrepresentations had failed to establish standing for

10  injunctive relief because he failed to allege that he would purchase another product and thereby

11  suffer the same harm. The same is true here. Because Cover does not allege that he is likely to

12  purchase more trim board from Windsor, and be fraudulently induced by the same representations

13  he now knows are false, he is not entitled to injunctive relief. *See Morgan v. Wallaby Yogurt Co.,*

14  *Inc.*, No. 13-cv-00296-WHO, 2014 WL 1017879, at *6 (N.D. Cal. Mar. 13, 2014) (dismissing

15  request for injunctive relief in a consumer class action where plaintiffs could not allege that they

16  would again be fraudulently induced to purchase the product based on statements they alleged to

17  be false); *Rahman*, 2014 WL 5282106, at *6 (substantially similar).

18       Cover's request for injunctive relief is DISMISSED WITHOUT LEAVE TO AMEND.

19  **V.     DECLARATORY RELIEF**

20       Cover requests in his Prayer for Relief that the court "[d]eclare, adjudge and decree that

21  Defendants have committed the violations of state law alleged herein." SAC at p.30. Windsor

22  asserts, without citing supporting evidence, that declaratory relief is improper because Cover's

23  other causes of action as pleaded provide him adequate relief. Mot. at 19.

24       "The decision to grant declaratory relief is a matter of discretion." *U.S. v. State of*

25  *Washington*, 759 F.2d 1353, 1356 (9th Cir. 1985). Even after full consideration of the merits, a

26  court may "exercise its discretion to refuse to grant declaratory relief because the state of the

27  record is inadequate to support the extent of relief sought." *Id.* "A claim for declaratory relief is

28  unnecessary where an adequate remedy exists under some other cause of action." *Mangindin v.*

United States District Court
Northern District of California

1    *Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009); *Achal v. Gate Gourmet, Inc.*,

2    No. 15-cv-01570-JCS, 2015 WL 4274990, at *23 (N.D. Cal. July 14, 2015).  Here, it is premature

3    to dismiss Cover's request for declaratory relief as the extent to which it is "unnecessary" in this

4    case has not yet been established.  Windsor's motion to dismiss the declaratory relief is DENIED.

5    **VI.    CONSEQUENTIAL DAMAGES, PUNITIVE DAMAGES, AND RESTITUTION**

6              Windsor asserts that because there are "no discernible differences" between California and

7    Rhode Island law with respect to this analysis, it is proper to apply California law.  Mot. at 20.

8    This is odd; Windsor contends that Rhode Island law applies to the substantive claims but not to

9    the damages analysis.  I urge the parties to brief this issue the next time it arises.

10             At this stage, I would allow the damages claims to proceed under California law.  The

11   question is whether Windsor's limitation of liability provision prevents the damages claims.  In

12   *Tunkl v. Regents of University of California*, 60 Cal. 2d 92 (1963), the California Supreme Court

13   held that exculpatory clauses are valid for claims involving negligence unless the case implicates

14   the public interest.  Windsor argues under *Tunkl* that California Civil Code section 1668, which

15   provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone

16   from responsibility for his own fraud, or willful injury to the person or property of another, or

17   violation of law, whether willful or negligent, are against the policy of the law," does not apply

18   because this case does not implicate the public interest.  Cal. Civ. Code § 1668.

19             It is not immediately clear whether Windsor's role in providing materials for the

20   construction of housing for the public implicates the public interest identified in *Tunkl*.  *See*

21   *Hulsey v. Elsinore Parachute Ctr.*, 168 Cal. App. 3d 333, 343 (1985) (holding that "the court in

22   *Tunkl* clearly had in mind medical, legal, housing, transportation or similar services which must

23   necessarily be utilized by the general public.").  Dispositively, however, absent from Windsor's

24   analysis is the additional rule that "limitation of liability clauses are ineffective with respect to

25   claims for fraud and misrepresentation."  *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209

26   Cal. App. 4th 1118, 1126 (2012).  Specifically, "a party may not contract away liability for

27   fraudulent or intentional acts."  *Blankenheim v. E. F. Hutton & Co.*, 217 Cal. App. 3d 1463, 1471-

28   72 (1990).  This rule reflects California's strong public policy "to look with disfavor upon those

who attempt to contract away their legal liability to others for the commission of torts." *Id.* at 1471. Because Cover's claims are based in fraud and misrepresentation, Windsor's motion to dismiss Cover's request for consequential damages, punitive damages, and restitution is DENIED.

**CONCLUSION**

Windsor's motion to dismiss the second amended complaint is GRANTED IN PART and DENIED IN PART as follows:

(i) Cover's FAL, UCL, and CLRA claims are DISMISSED WITH LEAVE TO AMEND if a basis for a California sub-class arises later in the litigation;

(ii) Cover's request for injunctive relief is DISMISSED WITHOUT LEAVE TO AMEND; and

(iii) Windsor's motion to dismiss the remaining claims is DENIED.

Cover may amend within 20 days to add any Rhode Island-specific claims, such as statutory consumer protection claims.

**IT IS SO ORDERED**.

Dated: February 10, 2016



WILLIAM H. ORRICK
United States District Judge