1
2
3
4
UNITED STATES DISTRICT COURT
5
NORTHERN DISTRICT OF CALIFORNIA
6

7   MCLANE COVER,                          Case No. 14-cv-05262-WHO

            Plaintiff,

8                                          **ORDER REGARDING MOTION TO**
                                           **DISMISS AND MOTION TO STRIKE**
9       v.
                                           Re: Dkt. Nos. 69, 70
10   WINDSOR SURRY COMPANY, et al.,

            Defendants.

11

12                          **INTRODUCTION**

13        For the fourth time, defendants Windsor Surry Company, d/b/a WindsorONE, and

14   Windsor Willits Company, d/b/a Windsor Mill (collectively "Windsor") move to dismiss plaintiff

15   McLane Cover's complaint alleging misrepresentations regarding WindsorONE trim board, a

16   housing trim product.  In response to an earlier motion, I conducted an extensive choice of law

17   analysis and determined that Rhode Island law applies to Cover's claims.  Cover's third amended

18   complaint ("TAC") both adds to and changes prior allegations, asserting that Cover is resident of

19   Massachusetts and not Rhode Island and that he reviewed Windsor's marketing materials from his

20   home in Massachusetts.  Even considering Cover's newly alleged facts, Rhode Island law applies

21   to his claims.  His California and Massachusetts law claims are dismissed.  Additionally, his

22   Rhode Island consumer protection claim falls under an exemption to the statute and is dismissed.

23   His remaining claims for breach of express warranty and implied warranty of merchantability are

24   plausibly pleaded.  Windsor's motion to dismiss is GRANTED IN PART and DENIED IN PART.

25   Windsor's motion to strike is DENIED because it is premature with respect to some issues and

26   unnecessary with respect to others.

27                          **BACKGROUND**

28        The background of this case has been described in previous orders.  Dkt. Nos. 37, 67.  In

*United States District Court*
*Northern District of California*

short, Windsor manufactures WindsorONE trim board.  TAC ¶ 1 [Dkt. No. 68].  Trim boards are a finger jointed product, meaning that each board is made of several shorter boards that are joined together using finger joints and adhesive.  *Id*. ¶ 28.  Cover bought and installed WindsorONE trim board on the exterior of his home in Rhode Island.  *Id*. ¶ 72.  He alleges that Windsor made misrepresentations about its trim board in advertising and marketing materials, including statements about its wood quality and performance.  *Id*. ¶¶ 30-38.

Cover alleges that prior to installation and purchase, he relied on the recommendations of his architect, contractor, and carpenter, all of whom were familiar with the product, including its "marketing material and warranty."  *Id*. ¶ 66.  His architect and master carpenter provided him with a compact disc ("CD") containing interactive information regarding WindsorONE products.  *Id*. ¶¶ 67-70.  He reviewed the CD from his home in Massachusetts.  *Id*. ¶ 66.  "The marketing material [on the CD] is what led the architect and carpenter to recommend the product to [Cover] for his use and purchase, and plaintiff relied upon those materials to make his purchase."  *Id*. ¶ 68.  He contends that contrary to Windsor's representations, the trim board is made with "low performance" pine, the adhesive is non-waterproof, and the product began to rot "well before its represented useful or warranted life."  *Id*. ¶¶ 40, 42, 47.  These defects caused "premature decay, rotting, splitting, warping, and discoloration damage" to the trim board installed on his home.  *Id*. ¶ 49.

The TAC alleges five causes of action: (1) violation of Rhode Island's Deceptive Trade Practices Act, or in the alternative, violation of the Massachusetts Consumer Protection Act; (2) breach of express warranty; (3) breach of implied warranty of merchantability; (4) negligence (asserted under both Rhode Island and California law); and (5) declaratory relief.  Cover seeks to represent a nationwide class either defined as "All persons and entities in the United States that own or owned homes, apartments, office buildings or other structures in which Trim Board is or was installed," or a more limited class encompassing "All persons and entities in Rhode Island or Massachusetts who own or owned homes, apartments, office buildings or other structures in which Trim Board is or was installed."  *Id*. ¶¶ 14, 17.

Windsor filed a motion to dismiss all but the declaratory relief claim.  Dkt. No. 69. [Mot.].

1   It also filed a motion to strike references to California law, injunctive relief, and Cover's

2   nationwide and Massachusetts class allegations.  Dkt. No. 70.  I heard argument on May 18, 2016.

3                                   **LEGAL STANDARD**

4   **I.     MOTION TO DISMISS**

5       A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

6   12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

7   2001).  A complaint "must contain sufficient factual matter, accepted as true, to state a claim to

8   relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

9   marks omitted).  A claim is facially plausible when it "allows the court to draw the reasonable

10  inference that the defendant is liable for the misconduct alleged."  *Id.*  In considering whether the

11  complaint is sufficient to state a claim, the court accepts as true all factual allegations contained in

12  the complaint.  *Id.*  However, the court need not accept as true "allegations that contradict matters

13  properly subject to judicial notice."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

14  2008) (internal quotation marks omitted).  "Nor is the court required to accept as true allegations

15  that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Id.* "[I]t

16  is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to

17  warrant further factual development."  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

18  **II.    HEIGHTENED PLEADING STANDARD FOR FRAUD OR MISTAKE**

19      Claims sounding in fraud or mistake are subject to the heightened pleading standard of

20  Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the

21  circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b). To satisfy this standard, a

22  plaintiff must identify "the time, place, and content of [the] alleged misrepresentation [s]," as well

23  as the "circumstances indicating falseness" or "manner in which the representations at issue were

24  false and misleading."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994)

25  (internal quotation marks and modifications omitted).  The allegations "must be specific enough to

26  give defendants notice of the particular misconduct which is alleged to constitute the fraud

27  charged so that they can defend against the charge and not just deny that they have done anything

28  wrong."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

United States District Court
Northern District of California

3

United States District Court
Northern District of California

### III.     MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) provides that "[t] he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.  The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw unwarranted inferences at trial is the type of prejudice that is sufficient to support the granting of a motion to strike." *Ayat v. Societe Air France*, No. 06-cv-01574, 2007 WL 1840923, at * 1 (N.D. Cal. June 27, 2007) (citations omitted).

## DISCUSSION

### I.     MOTION TO DISMISS

#### A.     Massachusetts and California Law Claims

In response to Windsor's third motion to dismiss, I conducted an extensive choice of law analysis, determined that Rhode Island law applied to Cover's claims, dismissed Cover's consumer protection claims based on California law and provided him with leave to amend to add parallel claims based on *Rhode Island* law.  Dkt. No. 67 at 22 (specifying that Cover may amend to add any "Rhode Island-specific claims, such as statutory consumer protection claims"). Remarkably, the TAC contains a *Massachusetts* Consumer Protection Act ("CPA") claim.  TAC ¶¶ 97- 108.

There are two reasons to dismiss this claim.  First, pursuant to Rule 15(a), a plaintiff may amend its complaint as matter of course only within certain circumstances, none of which is applicable to this case.  Otherwise, plaintiff must seek leave of the court or the opposing party's written consent.  "Only an amended complaint that is properly filed pursuant to the requirements of Rule 15 requirements can supersede the original." *Taa v. Chase Home Finance, LLC*, No. 5:11-cv-00554-EJD, 2012 WL 507430 at *1 (N.D. Cal., Feb. 15, 2012).  An amended complaint that has been filed without leave of court or consent of the defendants is without legal effect.

Federal district courts have occasionally considered new claims submitted in an amended complaint where a previous dismissal granted leave to amend without limitation. *DeLeon v. Wells*

*Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) (citing cases).  But in cases like this one, where "leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken." *Id*.  Cover's Massachusetts CPA claim exceeds the scope of allowable amendment under my previous order.  Because Cover failed to secure Windsor's consent or seek leave of court to amend his pleadings, Windsor's motion to dismiss this claim is GRANTED.

Second, even if I considered Cover's new allegations they do not change the result of the choice of law analysis that Rhode Island law applies.  Although Cover had alleged in his previous complaint that he was a resident of Rhode Island, he now asserts that he is a Massachusetts resident and that the Rhode Island house at issue is simply a vacation home. TAC ¶ 6.  Cover also alleges that he "received and reviewed recommendations from his architect, contractor, and carpenter and selected the faulty Trim Board from his home in Massachusetts." *Id*. ¶ 66.  In addition, the TAC specifies that the architectural firm Cover employed is headquartered in Massachusetts.  *Id*. ¶ 34.  The TAC does not indicate the location from which the materials were originally disseminated or communicated.  Beyond a tangential reference that the architectural firm he employed is headquartered in Massachusetts, the operative complaint contains no allegation that Windsor distributed or marketed its materials in Massachusetts.

As I explained in my previous order, a choice of law analysis involves a three-part "government interest" test. *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87-88 (2010) (internal citations and quotation marks omitted).  First, the court determines whether there are material differences between the relevant law of each of the potentially affected jurisdictions. *Id*.  Second, if there is a difference, the court examines the interests of each jurisdiction in the application of its own law. *Id*.  Third, the court "evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *Id*.  Concerning California's choice of law rules, the Ninth Circuit has said that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant

United States District Court
Northern District of California

1  interest." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593 (9th Cir. 2012).  California

2  considers the "place of the wrong" to be the state where the last event necessary to liability

3  occurred.  *Id.*

4         I previously analyzed the material differences between California and Rhode Island law

5  relevant to Cover's claims, including differences in privity requirements, statutes of limitation, and

6  available damages.  Dkt. No. 67.  I examined each state's interest in applying its own laws and

7  determined that the application of Rhode Island law was appropriate.  I noted that pursuant to

8  *Mazza*, the last events necessary for triggering liability, in this case "the communication of the

9  marketing materials, the purchase of the products, and product deterioration," all occurred in

10 Rhode Island.  *Id.* at 12.

11        Significantly, the newly pleaded allegations do not alter that the products were purchased

12 in Rhode Island and installed on a Rhode Island home.  The underlying injury, the deterioration of

13 the trim board, occurred in Rhode Island.  Even if the communication of the marketing materials

14 occurred in Massachusetts, which is unclear, the last event(s) necessary to liability occurred in

15 Rhode Island, and its law applies.[1]

16        **B.      The Rhode Island Deceptive Trade Practices Act ("DTPA") Claim**

17        Windsor argues that Cover fails to state a claim under DTPA because it falls under an

18 exemption to the DTPA pursuant to Rhode Island General Law section 6-13.1-4.  Mot. at 6-7.

19 This section provides that "[n]othing in this chapter shall apply to actions or transactions permitted

20 under laws administered by the department of business regulation or other regulatory body or

21 officer acting under statutory authority of this state or the United States."  6 R.I. Gen. Laws Ann. §

22 6-13.1-4.  The Supreme Court of Rhode Island interpreted this section to mean that activities

23 which are "subject to monitoring by state and federal regulatory bodies or officers" are exempted

---

[1] During the hearing on this motion, Cover argued that he should be allowed to assert his claims under various states' laws depending on the nature of the claim.  For example, he stated that his negligence claim should be governed by California law because that is where he alleges Windsor designed its products but that the breach of contract claims should be governed by either Massachusetts or Rhode Island law depending on where the underlying damage occurred. Because he did not make this argument in his opposition brief and provided no authority supporting his position, and Windsor did not have an opportunity to address his novel position, his argument is not addressed in this Order.

1   from liability under the DTPA.  *Kelley v. Cowesett Hills Associates*, 768 A.2d 425, 432 (R.I.

2   2001).

3        Windsor relies on *Kennedy v. Acura*, No. 01-cv-4063, 2002 WL 31331373 (R.I. Super.

4   Aug. 28, 2002) to argue that it is not liable under the DTPA because Cover is asserting a products

5   liability claim that is governed by the Magnuson-Moss Warranty-Federal Trade Commission

6   Improvement Act (the "Warranty Act").  Mot. at 7.  In opposition, Cover argues that his DTPA

7   claim is not exempt because *Kennedy* applies only to "consumer warranty claims" and that his

8   claims are based on marketing statements, not warranties.  Oppo. at 6 [Dkt. No. 77].

9        Although Cover is correct that *Kennedy* applies to consumer warranty claims, and not to

10   the potentially broader category of "products defects claims" as Windsor asserts, the distinction he

11   attempts to draw between his own case and *Kennedy* is logically inconsistent and unconvincing.

12   *Kennedy* holds that "consumer product warranty claims" are governed by the Federal Trade

13   Commission under the Warranty Act and are thereby exempt from the DTPA.  2002 WL

14   31331373, at *3.  Cover argues that his claim is not exempted by the Warranty Act because his

15   case does not concern the warranty offered by defendants, but rather Windsor's marketing

16   statements.  Oppo. at 7.  This contradicts his allegations.  The TAC alleges that Windsor's

17   "express affirmations, statements, assertions, and representations . . .  constitute express

18   warranties."  TAC ¶ 111.  His opposition brief also explains that the "advertisements and

19   descriptions found in [Windsor's] marketing and sales literature" are "express warranties."  Oppo.

20   at 15.  A finding that the marketing statements do not serve as warranties in this case would

21   undermine a significant portion of his argument.

22        Accordingly, Cover's claim falls under an exemption to the DTPA.  Windsor's motion to

23   dismiss this claim is GRANTED.

24        **C.    Implied Warranty Claim**

25        Windsor renews its argument that its limited express warranty bars Cover's claim for

26   breach of implied warranty.  Mot. at 13.[2]  Windsor cites to *Star-Shadow Productions, Inc. v. Super*

27   _____

28   [2] The WindsorONE warranty contains both a "Limited Warranty" and a "Warranty Disclaimer."
    The Limited Warranty reads: "Windsor Mill guarantees WindsorONE's end and edge-gluing for

United States District Court
Northern District of California

1    *8 Sync Sound System*, 730 A.2d 1081, 1084 (R.I. 1999) for the proposition that "a general

2    statement that no warranties exist beyond those contained in the document is sufficient."

3    However, the mere existence of such a statement is not enough.  Rhode Island General Law

4    section 6A-2-316(3) provides in relevant part that "to exclude or modify the implied warranty of

5    merchantability or any part of it the language must mention merchantability and, in case of a

6    writing, must be *conspicuous*."  R.I. Gen. Laws Ann. § 6A-2-316 (emphasis added).  The

7    comment on this provision explains that "this section is designed principally to deal with those

8    frequent clauses in sales contracts which seek to exclude 'all warranties, express or implied.'  It

9    seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying

10   effect to such language when inconsistent with language of express warranty and permitting the

11   exclusion of implied warranties only by conspicuous language or other circumstances which

12   protect the buyer from surprise."  *Id.*

13        Windsor attempts to address the issue of conspicuousness of the warranty language by

14   arguing that it is inconsistent for Cover to say that the limited warranty was inconspicuous while

15   also alleging that his architect, contractor, and carpenter "were all familiar with trim board,

16   including its marketing material and warranty."  Mot. at 13 (citing TAC ¶ 66).  Windsor's limited

17   warranty language appears at the bottom of a two-page document entitled "Recommended

18   Handling, Storage, & Installation Practices" and within the "Warranty" section of Windsor's

19   website.  RJN, Exh. 1. [3]  The limited warranty language in the recommended practices document is

20   _____

21   10 years and its primer for 5 years. Windsor Mill will replace, without charge, any WindsorONE
     product to be defective within that time. Such replacement is the exclusive remedy for breach of
22   warranty, with no consequential or other damages recoverable."  The Warranty Disclaimer
     provides: "Windsor Mill's guarantee is limited to the above Limited Warranty.  In Windsor Mill's
23   opinion, it's statement about WindsorONE products on this website and in printed literature are
     believed to be accurate, but do not constitute separate warranties. There are no warranties,
24   expressed or implied including merchantability, beyond the above Limited Warranty."
     [3] The requests for judicial notice of Exhibits 1-3, Dkt. No.71, are GRANTED under the
25   incorporation by reference doctrine.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (The
     incorporation by reference doctrine allows courts to "to take into account documents whose
26   contents are alleged in a complaint and whose authenticity no party questions, but which are not
     physically attached to the plaintiff's pleading.") (internal quotation marks and modifications
27   omitted).  Although Cover disputes the accuracy of the claims contained in these exhibits, he does
     not contest their authenticity.  The requests for judicial notice are granted as to the existence of the
28   documents but not as to the truth of their contents.  *See Lee v. City of Los Angeles*, 250 F.3d 668,
     690 (9th Cir. 2001).

1   located at the very bottom of the last page, in materially indistinguishable font from the rest of the

2   document.  A link to the warranty also appears on the documents contained within the CD Cover

3   reviewed.  RJN, Exh. 3.

4        Windsor argues that because the marketing CD clearly linked to the warranty on every

5   page, Cover must have been familiar with the limited warranty language.  But a review of the

6   materials on the CD does not compel that conclusion.  The CD, which as presented to the court

7   contains a collection of hundreds of files with no instructions or immediately apparent method to

8   easily navigate the information, reveals at least two different potential user interfaces.  One

9   appears to display a "Warranty" link on the main navigation bar and the other has a "Warranty"

10  link at the bottom of the page.  On the pages where the "Warranty" link is on the bottom of the

11  page, a user can easily navigate the website, using the navigation bar located on the top of the page

12  without necessarily seeing or clicking on the bottom links.  Without further evidence and

13  testimony, I cannot conclude that the warranty was so obviously linked to every page of the CD

14  that it would have been impossible for Cover to be familiar with the marketing statements without

15  being knowledgeable about the limitations of Windsor's warranty. [4]

16       Windsor's motion to dismiss this claim is DENIED.

17      **D.**       **Express Warranty Claim**

18       Windsor also renews its argument that under Rhode Island law its limited express warranty

19  serves to disclaim any and all other possible express warranties and that Cover's claim for breach

20  of warranty based on the marketing statements is thereby barred.  Mot. at 11-13.

21       Pursuant to Rhode Island General Law section 6A-2-313(1)(b), an express warranty is

22  created when "[a]ny description of the goods [is] made part of the basis of the bargain."  R.I. Gen.

23  Laws Ann. § 6A-2-313.  Cover has alleged the existence of multiple written statements describing

24  Windsor's products as "defect free," "free of lumber defects," "more resistant to cupping, twisting,

25  [] warping," "suitable for all interior and exterior applications," "waterproof," and "exceed[ing]

26

27  _____

[4] Although I allow this claim to go forward at this point, I note the conflict in Cover's allegations
that, on the one hand, his architect, contractor, and carpenter "were all familiar with trim board,
including its marketing material and warranty," TAC ¶ 66, but that, on the other hand, he was
"unaware of the limitation of remedies in Defendants' express warranty."  *Id*. ¶ 59.

28

United States District Court
Northern District of California

the standards" set by the American Society of the International Association for Testing and Materials.  TAC ¶¶ 30-38, 70, 112.  He asserts that Windsor's marketing statements and advertisements were plausibly "part of the basis of the bargain" because the "marketing material is what led the architect and carpenter to recommend the product to [him] for his use and purchase, and [he] relied upon those materials to make his purchase."  *Id*. ¶ 68.

Windsor argues its Warranty Disclaimer, which provides that "[t]here are no warranties, expressed or implied, including merchantability, beyond the above Limited Warranty," RJN, Exh. 1, disclaims the existence of any other warranties.

Windsor relies primarily on *Fidrych v. Inskip Motors, Inc.*, No. C.A. 73-1284, 1982 WL 604065, at **1-2 (R.I. Super. Jan. 6, 1982) to dispute Cover's characterization of its marketing statements as express warranties because they were not listed under the "Warranty section" of its marketing materials, but rather under the "Features and Benefits" section "for the limited purpose of marketing."  Mot. at 12.  But *Fidrych* does not involve an analogous situation.

In *Fidrych*, the court considered whether the inclusion of incorrect mileage on a car's invoice served as the basis for a breach of express warranty claim.  The invoice provided: "Warranty 60 days 50-50 mechanical in our shop or 2,000 miles whichever comes first.  Indicated Mileage: 44,342." *Fidrych,* 1982 WL 604065, at *2.  In fact the correct mileage was 104,628 and was indicated on a sticker on the car.  *Id.*  The court found that the indicated mileage was not an express warranty because it was only inserted for the limited purpose of "guid[ing] the parties should any mechanical problems arise" after purchase of the car.  *Id.* at *1.

Windsor attempts to apply *Fidrych*'s reasoning by arguing that its marketing statements were for the limited purpose of marketing and do not constitute an express warranty.  Mot. at 11-12.  *Fidrych* was decided after a trial on the merits during which there was conflicting testimony whether the car salesman ever represented to the plaintiff that the car only had 44,342 miles or whether the invoice "served no other purpose" than to guide the parties "should any mechanical problems arise either during the 60 days after purchase or before the plaintiff drove the car 2,000 miles."  1982 WL 604065, at *1.  I cannot draw a similar conclusion at the pleading stage.

Cover has plausibly alleged that Windsor's statements were accurate representations of the

1   goods and became part of the basis of the bargain.  Under Rhode Island law, it is not necessary

2   that a seller used formal words such as "warranty" or guarantee" to create an express warranty.

3   R.I. Gen. Laws Ann. § 6A-2-313.  Express warranties can be created by: (1) "Any affirmation of

4   fact or promise made by the seller to the buyer which relates to the goods and becomes part of the

5   basis of the bargain creates an express warranty that the goods shall conform to the affirmation or

6   promise;" or (2) "Any description of the goods which is made part of the basis of the bargain

7   creates an express warranty that the goods shall conform to the description."  Despite Windsor's

8   assertions to the contrary, statements do not have to be clearly labeled or categorized under a

9   "warranty" section, or even be intended to be a warranty, to be one.  *See Ingraham v. Union R.*

10  *Co*., 19 R.I. 356, 22 A. 875, 876 (1896) ("Nor is it true, as sometimes stated, that the

11  representation, in order to constitute a warranty, must have been intended by the vendor, as well as

12  understood by the vendee, as a warranty; for if the representation as to the character or quality of

13  the article to be sold be positive, and not mere a matter of opinion, and the vendee understands it

14  and relies upon it as a warranty, the vendor is bound thereby, no matter whether he intended it to

15  be a warranty or not.").

16          Windsor also reasserts its previous argument that because Cover alleges that he and his

17  agents were familiar with and relied upon the marketing material and warranty, his argument that

18  he was not aware of the terms of the limited warranty is implausible.  But under Rhode Island law,

19  limitation language is not enforceable if it is inconsistent with the other language.  R.I. Gen. Laws

20  Ann. § 6A-2-316(1) ("Words or conduct relevant to the creation of an express warranty and words

21  or conduct tending to negate or limit warranty shall be construed *wherever reasonable* as

22  consistent with each other …. [N]egation or limitation is inoperative to the extent that such

23  construction is unreasonable.")(emphasis added).  The Warranty Disclaimer on Windsor's website

24  provides that, "In Windsor Mill's opinion, its statements about WindsorONE products on this

25  website and in printed literature are believed to be accurate, but do not constitute separate

26  warranties."  RJN, Exh. 3.  Neither party has cited any relevant case law directly addressing the

27  "reasonableness" inquiry under this section of Rhode Island law.  As I explained in my previous

28  order, it is not clear at this time whether it is reasonable for Windsor to affirm the accuracy of its

1    marketing statements while, at the same time, limiting its liability.  Considering that this case is

2    still at a motion to dismiss stage and full discovery on what Cover should reasonably have known

3    has not been conducted, it would be inappropriate to dismiss this claim without additional

4    information.[5]

5           Windsor's motion to dismiss the express warranty claim is DENIED.

6           **E.     Punitive Damages**

7           Windsor argues Cover's request for punitive damages should be dismissed because he has

8    not sufficiently pleaded "criminality."  Under Rhode Island law, a plaintiff must plead that a

9    defendant's fault "amounts to criminality, which for the good of society and warning to the

10   individual, ought to be punished."  *Johnson v. Johnson*, 654 A.2d 1212, 1217 (R.I. 1995) (internal

11   quotation marks and modifications omitted).  "The standard in Rhode Island for imposing punitive

12   damages is rigorous and will be satisfied only in instances wherein a defendant's conduct requires

13   deterrence and punishment over and above that provided in an award of compensatory damages."

14   *Id*.  Cover's allegations do not meet this standard.

15          The TAC contains allegations that Windsor acted with "malice, deliberately, willfully,

16   knowingly, wantonly and with flagrant disregard of the safety of persons who might be harmed by

17   their product."  TAC ¶ 55.  But boilerplate usage of these terms is insufficient to justify a request

18   for punitive damages.  As a threshold matter, under Rhode Island law, punitive damages are not

19   available for breaches of contract claims even if the violation is willful.  *See D&E Realty, Inc. v.*

20   *Weinman*, No. C.A. 80-969, 1985 WL 663148, at *3 (R.I. Super. Feb. 15, 1985).  Additionally,

21   "[i]n order for a plaintiff to recover punitive damages it would appear that the actor must have

22   engaged in the conduct for the purpose of inflicting actual harm to the victim."  *Manocchia v.*

23   *Narragansett Television*, No. C.A. NO. PC/92-7046, 1996 WL 937020, at *3 (R.I. Super. Dec. 12,

24   1996).  Beyond Cover's rote use of terms like "malice," "wantonly," and "with flagrant

25   disregard," none of Cover's allegations supports a reasonable inference that Windsor acted with

26   the intent to harm.

27   _____

28   [5] Relatedly, consideration of whether Cover's damages are limited by Windsor's Limited
     Warranty is also appropriately decided at a later stage.

United States District Court
Northern District of California

1    Windsor's motion to dismiss Cover's request punitive damages is GRANTED.

2    **II.    MOTION TO STRIKE**

3        **A.    California Law and Injunctive Relief Allegations**

4        Windsor seeks to strike allegations in the TAC relating to California law and injunctive

5    relief as these claims were dismissed in my previous order.  The relevant allegations are as

6    follows:

- Whether Defendants violated California's False Advertising
7      Law ("FAL"), Cal. Bus. & Profs. Code § 17500, *et seq.*
- Whether Defendants violated California's Unfair
8      Competition Law ("UCL"), Cal. Bus. & Profs. Code §§
       17200, *et seq.*
9    - Whether Defendants violated California's Consumer Legal
       Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*
10   - Defendants have failed to resolve Plaintiff's warranty claim
       as provided in its warranty and as required by the laws of
11      California.
- Whether Defendants' conduct should be enjoined[.]
12   - Enjoin the Defendants from committing the violations of law
       alleged herein[.]
13
TAC ¶¶ 21(e), 21(f), 21(g), 21(n) 92, D (under prayer for relief).

14        These allegations relate to causes of action or forms of relief that have clearly been

15   dismissed.  Cover is not entitled to proceed on them.  There is no point in also striking the isolated

16   and scattered references to them throughout the TAC.  Windsor's motion to strike is DENIED.

17   Nothing in this Order should be read to support the viability of those claims.

18       **B.    Nationwide and Massachusetts Classes**

19        Windsor seeks to strike allegations relating to Cover's purported nationwide or alternative

20   Massachusetts classes.[6]  It argues that application of Rhode Island law to residents of all fifty

21   states would be arbitrary and in violation of the Due Process Clause.  Windsor also takes issue

22   with the manner in which Cover's proposed classes are currently defined.

23        Windsor raises some serious issues regarding the feasibility of Cover's proposed classes.

24   However, I will not strike Cover's class allegations or descriptions at this stage.  As I stated in my

25   previous order, if other adequate plaintiffs are added to this lawsuit, the application of other states'

26

27

28   _____
[6] Windsor also sought similar relief through its motion to dismiss.  Because the arguments in both
motions are substantially identical, I address them both here.

United States District Court
Northern District of California

laws may be appropriate.  Windsor's arguments are better addressed at class certification.

Windsor's motion to strike the class allegations and descriptions is DENIED.

### CONCLUSION

Windsor's motion to strike is DENIED.  Windsor's motion to dismiss is GRANTED IN PART and DENIED IN PART as follows:

1) Cover's claims under California and Massachusetts law are DISMISSED WITHOUT LEAVE TO AMEND; [7]

2) The DTPA claim is DISMISSED WITHOUT LEAVE TO AMEND;

3) Cover's request for punitive damages is DISMISSED WITHOUT LEAVE TO AMEND;

4) Windsor's motion to dismiss the remaining claims is DENIED.

IT IS SO ORDERED.

Dated: June 22, 2016

WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California

---

[7] This ruling would not preclude other plaintiffs from raising claims under Massachusetts, California or other state laws, if there is a basis to do so.

14